Graham, Judge,
delivered the opinion of the court:
This is a suit for damages alleged to have been caused by delays to the contract work proper through the alleged unwarranted requirements of the contracting officer and his representatives in having the plaintiff do certain work which, it is alleged, was outside of the requirements of the contract. The suit grows out of a contract entered into by the plaintiff with the defendant for the erection of a breakwater in the shape of a rubblestone mound at Marquette, Mich., in Lake Superior, for the purpose of affording additional protection to the harbor at that point. The contract became operative on the 20th of November, 1914. It provided that the plaintiff' should begin work within 15 days from that date and complete it by the 1st of December, 1916.
The proposed breakwater was to be 1,500 feet long and was an extension of the existing breakwater, 3,000 feet long, and under the contract was to be built from the end of this latter-breakwater and joined to it to make the two one continuous-breakwater. The description of the breakwater is set out in the specifications and in a blue print attached thereto, which latter has not been printed as part of the record. It is described in the findings.
About a year before the contract was entered into there-had been laid along the line of this extension an embankment upon solid sand, not as high and not as wide as the instant breakwater and upon and over which the latter was to be constructed. This embankment had been erected by the plaintiff, as had also the existing breakwater of 3,000 feet.
The plaintiff knew the ranges and axial line of the extension which he contracted to build. The defendant assumed no obligations to furnish engineers or to do engineering work, and the plaintiff assumed full responsibility for the construction of the work according to the specifications. The defendant had the right of inspection for the purpose of see *527 ing that the work was fully performed in accordance with the specifications and contract, and it was distinctly provided that the presence of the inspector would not relieve the plaintiff of any of his obligations under the contract.
The plaintiff, on April 28,1915, when ready to commence work, asked for an inspector and one was promptly sent. He was not an engineer which was known to plaintiff and he was not authorized or expected to do engineering work. He, without authority and by mistake, placed a range on the outer side of the existing breakwater and the plaintiff used this range and in so doing deposited stone for some distance out into the lake and beyond the lake side line of the proposed extension.
When the error was discovered, which was about the middle of May, 1915, the work of depositing stone along this line was stopped.
The plaintiff did the work without objection and without asking for written instructions or filing any written protest as required by the contract, although he knew the true ranges and axial line, and submitted a voucher certifying that the work was done under the contract, and was paid for the full amount of work done at contract prices.
At the end of the existing breakwater was a wooden crib filled with stone. Under the direction of the inspector and engineer, during the years 1915,1916, and a portion of 1917, the plaintiff deposited stone on both sides of this crib, and in capping and joining the extension to the original breakwater, which work was outside of the contract — in other words, extra work — without objection or asking for written instructions or filing a written protest as required by the contract, and submitted a voucher for payment certifying that such work was done under the contract, and was paid in full at contract prices for the work, although the contract provided that in case of extra work the defendant should not be liable to pay unless the payment had been agreed upon in writing before the obligation was incurred. And while as an original proposition the plaintiff could not — under the contract — have compelled the defendant to pay for this work, yet, inasmuch as the defendant accepted the work, received the benefit, and has paid for it, it must be held to *528 have waived its rights to enforce the formalities of the contract with regard to extra work, and should not be allowed to recover the amounts paid the plaintiff for this and other extra work for which it claims an offset. Clark v. United States, 95 U. S. 539; South Boston Iron Company v. United States, 118 U. S. 37; and Horton v. United States, ante, p. 395.
The items of the plaintiff’s claim for damages all grow out of the contention on the part of the plaintiff that he-was not able to complete the work within the time, fixed by the contract owing to the time consumed and materials used in doing this extra work at the direction of the defendant’s representatives, and that had not the time consumed in this work been so consumed and the stone used for this purpose been so used, he would have been able to have completed the work by the 1st of December, 1916, the time fixed for completion; and that owing to the delays occasioned he was unable to complete the work on time and was compelled to ask for an extension of time and carry over his plant during the winter months of 1916-17, and was not able to complete the work until the spring and summer of 1917, the work being completed about the 1st of July, 1917. The time was extended at the request of the plaintiff in a letter dated September 29, 1916, in which the plaintiff alleges as reasons the extreme scarcity of labor, the inclement weather, and the increased amount of work required over the original estimated amount. The estimated amount of work called for by the contract was 250,000 tons, and the amount actually used to complete the work, including that used for additional work, was 254,914 tons, an overplus of 4,944 tons. It will be seen, according to the plaintiff’s own statement in his letter asking for an extension of time, that the delay caused by the extra work was only one of three causes for delay which he assigned, the others being labor troubles and bad weather
However, there were other causes of delay, namely, in getting machinery delivered at the beginning of the work, in securing power from the municipal light plant at the beginning of the work, in getting rafts and other equipment ready at the beginning of the work, inability to get covering stone later on in the work and, especially, in taking from the *529 work without securing the consent of the defendant as required by the contract for approximately three months a derrick which previousy had done about one-half of the work of placing stone. Further, it does not appear how much of the. delay was due to these causes and how much was due to the performance of said extra work.
The contract also required that if the plaintiff should consider any work to be required of him outside of the requirements of the contract or consider any demand by the contracting or inspecting officers as unfair he should ask for written iñstructions and decision immediately and then file a written protest with the contracting officer against the same within five days thereafter, or be considered as having accepted the requirement and ruling. This the plaintiff did not do.
The court has found that the delay was not attributable to the fault or misconduct of the defendant. It, therefore, follows that the plaintiff can not recover for damages by reason of such delay. In view of this conclusion, it becomes unnecessary to discuss the question of whether the damages are too remote or whether they have been satisfactorily proved as to amounts. The petition should be dismissed and judgment entered for the defendant, and it is so ordered.
Hay, Jud.ge; Downey, Judge; and Campbell, Chief Justice, concur.